IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOE A. GALLEGOS,

        Plaintiff,

v.                                                                     CIV 00-1636 MCA/KBM

JO ANNE B. BARNHART,[1]
Commissioner of Social Security,

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

       This matter is before the Court on Plaintiff's Motion to Reverse or Remand. *Doc. 11.* Plaintiff raises three issues, whether the Administrative Law Judge ("ALJ"): (1) erred in his credibility determination; (2) failed to consider Plaintiff's obesity as a nonexertional impairment in his residual functional capacity assessment; and (3) erred at step five in the hypothetical he posed to the vocational expert and his reliance on one of the jobs she identified.

       If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *E.g., Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1497-1500 (10th Cir. 1992). My assessment is based on a review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency. *E.g., Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). "Substantial evidence" means "such relevant evidence as a reasonable

---

[1] On November 9, 2001, Jo Anne B. Barnhart was sworn in as Commissioner of Social Security. In accordance with FED. R. CIV. P. 25(d)(1), Ms. Barnhart is substituted as the Defendant in this action.

mind might accept as adequate to support a conclusion." *Castellano v. Sec'y of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994) (internal quotations and citations omitted). Having carefully reviewed the administrative record, the briefs and relevant authorities, I find Plaintiff's arguments without merit for the reasons set forth in Defendant's response. As such, I confine my analysis to a few comments.

*Credibility*

At the time of the hearing on May 1999, Plaintiff was forty-seven. He worked until January 1998 as a janitor in the Albuquerque Public Schools, when he retired because his heart condition precluded him from engaging in the physical labor required for the job. Plaintiff is 5'11" tall and obese – his medical record showing his weight fluctuating to above 300 pounds. His heart condition is stable, and his symptoms of tachycardia and hypothyroidism controlled by medication. *See Administrative Record ("Record")* at 129-30, 146, 152-54. Plaintiff testified that he has dizzy spells, is fatigued to the point that he must nap two to three hours a day, and suffers from shortness of breath, all of which prevent him from working. The ALJ found these assertions were not entirely credible based on the objective medical evidence.

Plaintiff argues that three objective factors support his credibility: consultative examining physician Dr. Anthony Reeve's opinion; an "ejection fraction rate" of 40% as opposed to the 50% cited by the ALJ; and Plaintiff's long work record coupled with his stated willingness to work if he could. *See Doc. 12* at 6-7. I agree with Defendant, however, that the objective medical evidence from Plaintiff's treating physicians undermines the credibility of what he related to Dr. Reeves and testified to at the hearing. Specifically, at his first annual check-up in September 1997 after being diagnosed with cardiomyopathy, Plaintiff weighed 308 pounds and his treating

2

physician noted:

> Mr. Gallegos is doing quite well. He has not had any chest
> discomfort or shortness of breath since we last saw him. He
> recently bought a mountain bike and has been biking one to two
> miles with that and he does not have a shortness of breath with that.
> He also denies orthopnea and paroxysal nocturnal dyspnea. he has
> not had any dizzy spells nor has he had any extremity swelling. He
> is pretty anxious about his upcoming retirement in January.

*Record* at 146. Plaintiff subsequently retired and shortly thereafter applied for benefits.

In August 1998, Plaintiff was seen by Dr. Reeves. At that time he complained that he could not "can only tolerate 15-20 minutes of activity before he has to rest, sit down and not do anything," *id.* at 152, reported "debility, weakness and fatigue . . . [and] ongoing shortness of breath," *id.* at 153. Dr. Reeves found cardiomegaly, shortness of breath with exertion, but that Plaintiff was medically stable. Despite his findings that Plaintiff's endurance is weak and probably could not function in a job that would require prolonged walking, Dr. Reeve nevertheless found Plaintiff could do sedentary work that required only minimal walking or minimal lifting/pushing/pulling no more than ten pounds. *Id.* at 154.

In contrast to what Plaintiff told Dr. Reeve, a month later during his annual examination in September 1998, Plaintiff's treating physicians noted:

> The patient believes he had a good year. His only complaint is that
> he becomes a little more fatigued with physical activity, although is
> exercise capacity sounds quite high. The patient does walk two
> miles per day. Sometimes he has to stop after a mile and a half
> because he is fatigued. He rests for 15 minutes and then is able to
> complete the two miles. He is able to work in his yard for 2 ½
> hours at a time without stopping. He denies dyspnea on exertion,
> paraxsyal nocturnal dyspnea, or orthopnea, ankle swelling, chest
> discomfort, palpitations, dizziness, or syncope.

*Id.* at 129. Plaintiff told his treating physicians that he does not watch his diet, had gained 20-30

3

pounds in the past year, and he believed the weight (331 pounds) "is the cause of his fatigue." *Id.* at 129. Plaintiff rejected the treating physicians' offer to refer him to a dietician, but he declined, preferring to try and lose weight on his own. *Id.* at 130.

At the May 1999 hearing before the ALJ, Plaintiff testified that he did not want to retire, but was forced to, and currently wanted to work.

There is authority in the Tenth Circuit, as Plaintiff contends, for the proposition that prior work record is one of the factors the ALJ should consider in making his credibility determination. *Bean v. Chater,* 77 F.3d 1210, 1213 (10th Cir. 1995). However, unlike what is suggested by the language from the decisions in the Second Circuit he cites, prior work record is but one of a number of factors that can be relevant. *Id.* As the Tenth Circuit recently noted, "[c]ontrary to plaintiff's view, our opinion in *Kepler* [*v. Chater,* 68 F.3d 387 (10th Cir. 1995)] does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Qualls v. Apfel,* 206 F.3d 1368, 1972 (10th Cir. 2000).

Here, the ALJ's credibility determination is specifically linked to the objective medical evidence from the treating physicians and Dr. Reeve's report. *Record* at 17-18. Thus, I find that, as *Kepler* requires, the ALJ's credibility determination is "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler,* 68 F.3d at 391 (internal quotations and citations omitted); *see also Casias,* 933 F.2d at 801 (courts should "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.").

4

*Residual Functional Capacity*

Related to the above claim, Plaintiff next argues that the ALJ failed to adequately take his nonexertional impairments of obesity and related complaints of fatigue into account in making his residual functional capacity assessment. I disagree. The ALJ noted Plaintiff's reported obesity, weight gain and his complaints of fatigue and relied on the treating physician reports and Dr. Reeve's evaluation in concluding Plaintiff has the residual functional capacity for sedentary work. *See Record* at 17-18. Plaintiff's obesity and fatigue were factors in Dr. Reeve's evaluation and he nevertheless found Plaintiff could perform sedentary activities. *Id.* at 154. The determinations of other nonexamining evaluators are in accord. *See id.* at 166, 168-75. Furthermore, Plaintiff's treating physicians noted considerable physical activity on his part despite his weight. As the ALJ notes, however, Plaintiff's treating physicians never did place him on restrictions. Furthermore, they urged him to control his diet to lose weight, and offered dietician assistance to do so, which Plaintiff declined. Thus, I find that the ALJ did consider these impairments.

*Vocational Expert Hypothetical*

As for step five, Plaintiff raises two issues. He argues that the ALJ did not ask the vocational expert to include in her hypothetical that Plaintiff's fatigue requires him to nap two to three hours per day, which would leave no jobs would be available to him. This argument is without merit. As discussed above, the ALJ discounted Plaintiff's assertion as not credible. It is well settled that

> [t]he hypothetical question should include all--and only--those impairments borne out by the evidentiary record. . . . The VE relied on the limitations found by the ALJ, which are reflected in the RFC assessment form. The ALJ was not required to accept the answer to a hypothetical question that included limitations claimed

> by plaintiff but not accepted by the ALJ as supported by the
> record. . . . We conclude the ALJ did not err in relying on the
> VE's testimony.

*Bean,* 77 F.3d at 1214; *see also Decker v. Chater,* 86 F.3d 953, 955 (10th Cir. 1996); *Talley v. Sullivan,* 908 F.2d 585, 588 (10th Cir. 1990) (the ALJ is not bound by the vocational expert's opinion in response to a hypothetical question which includes impairments that are not accepted as true by the ALJ).

Plaintiff also contends that one of the jobs the vocational expert identified (optical polisher or assembler) was actually a light and skilled position as opposed to unskilled sedentary work. He argues in his reply that this was the only job the ALJ relied on in finding Plaintiff can do other work. In fact, the ALJ's findings also identified the jewelry stringer position (DOT 770.687-026) which is undisputably a sedentary unskilled position. *See Record* at 48, 19. Since the vocational expert identified at least one unskilled sedentary position that Plaintiff can perform and the ALJ relied on that in his findings, this argument is without merit.

Finally, Plaintiff suggests something must be amiss because the vocational expert testified there are 2000 jewelry stringer jobs in New Mexico, while there are only 3600 nationwide. However, there is no contention that either figure is not a significant number or that the ALJ erred in his analysis. Nor is this a basis upon which to remand.[2]

---

[2] A claimant will not be found disabled if she can perform "work that exists in the national economy," which means "work . . . exist[ing] in significant numbers either in the region where [the claimant] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). The determination that work exists in significant numbers in the national or regional economy does not depend on whether the work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired for a job if he or she applied. *See id.* We have "never drawn a bright line

Wherefore,

**IT IS HEREBY RECOMMENDED** that Plaintiff's motion be denied and the decision of the Commissioner affirmed.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE

---

establishing the number of jobs necessary to constitute a 'significant number,'" leaving that decision to the ALJ's "common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Trimiar* [*v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992)].

*Prince v. Apfel,* 1998 WL 317525, *3 (10th Cir. 1998) (unpublished), *declined to follow on other grounds Haddock v. Apfel,* 196 F.3d 1084 (10th Cir. 1999); *see also Evans v. Chater,* 55 F.3d 530, 532-33 (10th Cir. 1995) (step five satisfied by at least one occupation that exists in sufficient numbers); *Chavez v. Apfel,* CIV 94-381 M/WWD, Slip Op. (D.N.M. April 5, 2000) (remand to correct clerical oversight where DOT in fact lists numerous positions of the sort cited by vocational expert that are in fact sedentary as opposed to light, is harmless error and "would be a pointless use of administrative resources.").